Okay, Mr. Light. Yes, good morning and may it please the court. This case presents an interesting question under the causation element of the retaliation provision of the False Provision. It is somewhat paradoxically that Mr. Nesbitt, who is an emergency medical technician for Candler County Emergency Medical Services, had engaged in protective conduct by reporting what he thought was fraud to his superiors, but then his reporting was insufficient to clear the causation barrier. Now, briefly, while actually going to the court's order, Judge Wood below said that she thought the architecture or the chain of command in this case was important. And actually, I agree with the judge. It is very important for a couple of reasons. One is the particular context in which the relator is employed and how decisions are made becomes very important when considering... Are you assuming but for? No, Your Honor. We would urge that, and it's in the brief and probably our major point, back in 1986, there was a Senate Judiciary Committee report where the Senate Judiciary Committee actually talked about what it meant by because in the case of this statute. So, pursuant to the policy of effectuating legislative intent, we would argue under that... And that's an expression of Congress as a whole as opposed to just what some committee staffers said when they got together in a room where no one else existed to... or no member of Congress existed. And I would agree with the court. The distinction, I think, that's important to keep in mind here is that we're dealing with a False Claims Act. Now, I'm aware of the Supreme Court's adoption of a but-for standard in the case of retaliation under a Title VII discrimination case. That was in the University of Texas versus Nassar case. And Justice Kennedy in that case, it was sort of in dicta, but he mentioned the prevalence of Title VII actions in the federal court. And I think what the court was getting at through using such a strict causation standard was that they were really trying to narrow down the amount of cases. But here we have the False Claims Act, which is 150-plus years old, initially developed to help the government, help encourage people to come forward and report fraud. I think given the purpose of the statute to, one, encourage reporting of fraud and to protect relators, that the causation—because of requirement in 3730H in the case of the FCA should be interpreted more broadly than but-for. So you're arguing that because there are fewer cases under this statute, we should interpret the same words differently? Well, and thank you for the question. I think that because of—the words because of—and I'm aware of Supreme Court decisions like Gross and University of Texas. But I think that's a causation element in the statute in that that is subject to differing interpretations. The same language is subject to different interpretations, but you've said because there are fewer cases brought under this statute. Is that your argument? Well, my real argument is a policy argument, and it's because the False Claims Act has kind of a dual purpose. Like some of these other statutory schemes where you have a retaliation provision, it provides for a private right of action to citizens. But really, it is to encourage people to come forward and bring claims on behalf of the government. So it is not purely to vindicate private rights. It also is a public function, and I would submit that that's an important consideration. And when the Senate Judiciary Committee, back in 1986, was considering the statute, it says, like in other whistleblower—under other whistleblower statutes, we hold that because means that it was motivated at least in part by a retaliatory animus. Why didn't they say at least in part? I'm sorry, sir? As a simple term, why didn't they say it was motivated at least in part? Or is it proximate causa? They did not use that language. They knew what it meant. Because means because. It does. Your Honor, they didn't use the language. And, you know, if you read cases like the Staub case, Justice Scalia's opinion, that case involves a statute with that motivated in part language. And Congress used the language it did. And, you know, the only grounds to broaden it, and I think realistically thinking about, you know, the False Claims Act itself, the purposes behind the act, and the context, the employment context in which relators find themselves in, you know, they may not know the False Claims Act even exists. They may have a structure or hierarchy in their place of employment where the decision-making authority may never have any contact with. But if we don't accept the policy argument, the legislative history argument, and if we follow the language and what the Supreme Court has done in other similar situations and adopt a but-for causation, you lose, correct? We lose. You're sure. So, anyway, I'll talk briefly about the facts in the case. Jamie Nesbitt was an EMT for Candler County. He observed what he thought was fraud and he rode in an ambulance. They bill out, all the EMTs and paramedics bill out what are essentially patient trip reports. And those have a narrative component. And those eventually get turned over to the receiving hospital and to federal insurance programs like Medicare. Mr. Nesbitt found that, you know, well, he thought there was evidence that a particular individual named Donald Greer, who was the deputy director of the Candler County EMS, was causing narratives to be changed and also cutting and pasting signatures onto patient trip reports. Mr. Greer was Mr. Nesbitt's superior. There were other employees, too, who testified that, you know, they observed similar conduct. The director was Mr. David Moore. And the way it works in Candler County is similar to a lot of counties around the state. Really, all employment decisions, hiring or firing, are made by the Candler County Board of Commissioners. The directors can make a recommendation. When the commission meets, then if there's a recommendation to terminate an employee, the commission will go into an executive session and vote on whether or not to terminate the employee. In Mr. Nesbitt's case, he took up what he thought was fraud with Mr. Greer and Mr. Moore. Initially, his hours were cut back. Mr. Greer and Mr. Moore met with Mr. Lindsay, who's the administrator for the county, and they met about recommending Mr. Nesbitt's termination. The board, the commissioners met. They reviewed the recommendation by Mr. Moore and Mr. Greer and voted to accept it. This, to go to the cat's paw theory of liability, this is precisely the circumstances that occur under the cat's paw theory, which is really, you know, and that may be a bit of a derisive term for it. But really, it's trying to impute a discriminatory animus onto an employer where an employee cannot show that, well, you know, the majority of the board of commissioners were biased against me. And, you know, that allows, in the case where the decision-making body has not independently investigated the allegations, it allows for a plaintiff to go forward and to clear that causation element. And, you know, I mean, we've essentially acknowledged that there's a strong policy argument here, you know, and that's kind of what we're traveling under. But we would submit that, you know, it makes it insurmountable in a lot of cases for a relator to have to show, well, what were the real decision-makers thinking? Especially if there's, as, you know, Judge Wood said, a chain of command here. So, we would respectfully submit that adopting a discriminatory animus test or some sort of broader causation where, you know, a dependent can show, maybe through circumstantial evidence, that his termination was motivated at least in part or not, you know, as you see in the Title VII, you know, proving a strict Title VII claim, that they're not wholly unrelated. We would, you know, contend that that is, that's a fair standard to a false claims relator. So, yeah. Are there any questions before my… I don't believe so, but you've got your three minutes in reply. Mr. Stewart. Thank you, Your Honor. Good morning, and may it please the Court. On behalf of Candler County, I would like to first note my, of counsel, Edmund A. Booth, Jr., who was at the table. He was on the brief with me. The Court's question went directly to the heart of the matter, and the concession from appellant concludes this case. The language is clear. It's plain in the statute. This is a but-for standard. This Court has consistently applied that. We also have the teachings from other statutes. Clearly, the same language in the ADEA should have the same meaning as it is in this case. That's the Sims case that I'm referencing, which is the Age Discrimination and Employment Act. That's from 2013. They looked at the but-for causation standard. That's the same standard that we have in this case under the False Claims Act. But wasn't that the decision in which they said there were two statutes that Congress acted on at the same time and then one included different language in the other? We don't have that here, do we? In this case, Your Honor, I would point out as far as the legislative history, the False Claims Act was amended in 2010. And so Supreme Court decisions, for example, in Gross v. FBL in 2009, which was also about the ADEA and the causation standard, Congress knew when they amended the statute in 2010, what they're presumed to know, that the because-of language in the False Claims Act and also in the ADEA means but-for. And so it's slightly different than in the Sims case, but same language and same result as appellant has conceded today. Your Honor, I believe that it goes to the heart of the case. In fact, that's as summed up on page 5 of the appellant's reply brief. Mr. Nesbitt's core argument is requiring a relator to demonstrate that his or her protected activity was the but-for cause of his or her termination is contrary to congressional intent. And that is the core of their argument. And the language of the statute is clear. The 11th Circuit has been consistent in the Mack case from 2005. They addressed a very, very similar factual situation to what we have here. That was Richmond County over in Augusta, Georgia. And with facts even more sympathetic to a relator in that case said there is not causation for the very reason that Judge Wood in her well-reasoned district court opinion found. Of course, we also have the Reynolds opinion from this court also, which addressed this and put to rest the contention that appellant has made in his argument about the cat's paw. The cat's paw is inappropriate in a but-for scenario. And so when the appellant cites to the Staub case, S-T-A-U-B, the Supreme Court case from 2011, it's important to remember that is about a different statute, different statutory language. That is the U-S-E-R-R-A, USERRA statute, which protects our armed services. So it is important, as Judge Branch, you pointed out today, same language, different statutes must be interpreted the same. I believe that addresses the heart of it. If the court doesn't have any questions for me, I do not mean to belabor the point. We deeply appreciate that. Thank you. Mr. Lake, three minutes. That's not enough time to belabor anything, so feel free to take all three of them. I can't belabor anything with that. And I won't. Just very quickly, going to the core policy argument, I'll say that even though we're sort of stuck with the language of the statute, I would submit that the policies underlying this issue are significant. Now we talk about the cat's paw theory, as I've talked about and as Mr. Stewart has talked about, as applicable to your average garden variety, Title VII claim gets the benefit of establishing causation via the cat's paw theory. But a false claim relater who came forward and is retaliated against has to meet a very, very high but-for standard. And even though it involved a different statute with different languages, as we acknowledge, I'll very quickly quote Justice Scalia's language in Staub v. Proctor Hospital. It dealt with an Army reservist, and the court noted that the people who make the ultimate decisions in relation to the appellant in that case do it on the basis of performance assessments. We have in this case, I mean, Mr. Nesbitt went beyond what a typical relater would have done. Not only did he report it to his supervisor, but he also went even further and reported it to one of the commissioners. Now, you know, he, I mean, he didn't report it to all of the commissioners. So, you know, there's no way we can stand here and argue that all of them were biased against him. But this is a classic case of, you know, the commission acting and kind of being a rubber stamp for a recommendation by a director, Mr. Nesbitt's supervisor. So, with that, I would thank the court for its time. Appreciate that, Mr. Blake. Thank you. Third and final case is Grange Mutual Casualty Company v. Bayston et al. Is this the case in which there's a motion to end court exhibits? Yes, Your Honor, but we made the determination not to utilize the motion at this point. Such a wise determination. Let me tell you, I've gotten, from the years I've been on the court, a lot of those motions, and 90% of the time, you can't see the writing from the bench. Understood. And funny thing, the longer I serve, the less I'm able to see the writing from the bench. But I just want to make sure, I thought I had already granted that, and I found out late I hadn't. I was hoping I hadn't cut you off from the opportunity.  Thank you, Your Honor. All right. Ms. Mills.